CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 0 8 2008

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| LARRY C. BOWMAN, | |
| Plaintiff, | |
| v. | |
| SELECTION MANAGEMENT SYSTEMS, INC., an Ohio Corporation | Civil Action No. 7:06-CV-00110 |
| | **MEMORANDUM OPINION** |
| Defendant/Third-Party Plaintiff | By: Hon. James C. Turk |
| v. | Senior United States District Judge |
| TIMES-WORLD CORPORATION, d/b/a THE ROANOKE TIMES, | |
| Third-Party Defendant | |

This case is presently before the court on third-party defendant, Times-World Corporation, d/b/a The Roanoke Times' ("Times-World") Motion to Dismiss Third-Party Complaint (Docket No. 56). In the Motion to Dismiss, Times-World contends that Third-Party Plaintiff, Selection Management Systems, Inc. ("SMS") failed to state a claim in its Third-Party Complaint (Docket No. 50) upon which relief may be granted. Times-World therefore requests the court to dismiss SMS's Third-Party Complaint in its entirety. SMS filed a reply Memorandum in Support of its Third-Party Complaint (Docket No. 62), and the court heard argument from the parties on September 23, 2008. For the reasons set for in this Memorandum Opinion, Time-World's Motion to Dismiss is hereby denied.

## I.

SMS is an Ohio-based corporation that performs pre-employment background checks for other businesses. (Third-Party Compl. ¶ 1). One of SMS's customers was

Times-World. (Third-Party Compl. ¶ 11). On or about August 2, 1999, SMS and Times-World entered into an Employee Research Service Agreement (the "Agreement") that set forth various rights and responsibilities of SMS and Times-World regarding any background checks requested by Times-World and provided by SMS. (Third-Party Compl. ¶ 6). The Agreement was based on a standardized agreement that SMS used for many of its customers. (Third-Party Compl. ¶ 7).

In February 2005, Plaintiff Larry C. Bowman ("Bowman") received a job offer from Times-World for a general manager position at the Blue Ridge Business Journal, a subsidiary of The Roanoke Times. (Second Am. Compl. ¶ 7). The offer, however, was contingent on Bowman's successful completion of an employment and criminal background check. (Second Am. Compl. ¶¶ 7-8). On February 8, 2005, Times-World requested SMS to conduct this investigation. (Second Am. Compl. ¶¶ 7-8).

On February 10, 2005, SMS submitted a "Fastrax" report to Times-World regarding its background check of Bowman. (Second Am. Compl. ¶ 10). The Fastrax report was based on SMS's review of public court records and revealed that Bowman had received eight misdemeanor convictions in Montgomery County, Virginia, and one misdemeanor conviction in Smith County, Tennessee. (Third-Party Compl. ¶ 12). The Fastrax report also revealed that the Smith County misdemeanor conviction involved a charge of "contributing to the delinquency of a minor." (Second Am. Compl. ¶ 10, Second Am. Compl. Ex. A). In support of its accuracy, the Fastrax report stated that the Smith County misdemeanor conviction was verified by Bowman's name and a Carthage, Tennessee, address. (Second Am. Compl. ¶ 10, Second Am. Compl. Ex. A).

2

On February 10, 2005, Times-World contacted Bowman to notify him that the pre-employment Fastrax report revealed eight misdemeanor convictions. (Second Am. Compl. ¶ 12). Times-World also told Bowman that it was immediately revoking its offer of employment. (Second Am. Compl. ¶ 12). In an effort to correct the report, Bowman contacted SMS the next day and stated that he had never lived, resided, or operated any business in Carthage, Tennessee, and had never been charged with or convicted of any crimes in Smith County, Tennessee. (Second Am. Compl. ¶ 11). SMS re-investigated the Smith County misdemeanor conviction in more detail, and it issued an amended Fastrax report indicating that Bowman had not been previously charged with or convicted of any crimes in Smith County, Tennessee. (Second Am. Compl. ¶ 14, Third-Party Compl. Ex C). Times-World, however, did not re-issue its employment offer.

Pursuant to various provisions in the Fair Credit Reporting Act, 15 U.S.C. § 1681, Bowman filed the instant action against SMS alleging that the company's incorrect reporting of the Smith County conviction provoked Times-World to withdraw its job offer, thereby causing Bowman actual damages. (Third-Party Compl. ¶ 17). SMS then filed the Third-Party Complaint at issue here, arguing that the damages to Bowman—if any—were a result of Times-World's "precipitous withdrawal" of its employment offer, not a result of SMS's background report. (Third-Party Compl. ¶ 18). SMS also claims in its Third-Party Complaint that should Bowman succeed in his claims, Times-World is obligated to indemnify SMS for any liability related to Bowman's claims according the terms of the Employee Research Service Agreement. (Third-Party Compl. ¶ 22). Times-World denies that the language of the Agreement creates any such obligation, and thus it filed this Motion to Dismiss. (Third-Party Defendant's Mot. to Dismiss at 5).

3

## II.

In deciding Times-World's Motion to Dismiss, the court must interpret three provisions contained in the Employee Research Service Agreement. Clause Four (4) of the Agreement states as follows:

> Selection Management Systems cannot be an insurer of the accuracy of public records. The undersigned agrees and understands that the accuracy of any information furnished is not guaranteed by Selection Management Systems. The undersigned releases Selection Management Systems, its affiliated companies, officers, agents and employees from any and all liability, including, without limitation, liability or damage in connection with the preparation of such reports and from any loss or expense suffered by resulting directly or indirectly from Selection Management Systems' report or those of affiliated companies.

(Third Party Compl. Ex. A). Clause Five (5) states:

> In no event shall Selection Management Systems have any responsibility or liability to whatsoever for any failure or delay in performance which results from or is due to, directly or indirectly and in whole or in part, any cause or circumstances beyond the reasonable control of Selection Management Systems.

(Third-Party Compl. Ex. A). Finally, the concluding sentence of the Agreement states:

> The provisions of this agreement relating to indemnification and confidential information shall survive any expiration or termination of this agreement.

(Third-Party Compl. Ex. A).

In its Motion to Dismiss, Times-World claims that these provisions—individually and/or collectively—do not establish an obligation for Times-World to indemnify SMS. To the contrary, Times-World argues that the only contractual obligation created by way of the three provisions is that Times-World must release and waive any future claims it might acquire against SMS. In support, Times-World distinguishes the meanings of "release" and "indemnity" and argues while it did agree to release any potential right to

4

assert future claims against SMS, Times-World never expressly or implicitly agreed to indemnify SMS from liability that it may incur from anyone else. Times-World further argues that the Agreement's vague usage of the word "indemnification" does not allow for the court to read an implied right of indemnity into the other two provisions.

In its reply, SMS contends that these provisions are interrelated and together create an obligation for Times-World to indemnify SMS. In particular, SMS claims that the final sentence of the Agreement refers to Clauses Four and Five when it references the "provisions of this agreement relating to indemnification." Because Clauses Four and Five provide that SMS shall "in no event . . . have any responsibility or liability," SMS argues that the "indemnification" referred to in the Agreement's last sentence is the operative means by which SMS can be—and should be—released from liability.

In the alternative, SMS also argues that the Agreement is ambiguous or unclear regarding the meaning of "indemnification." SMS claims that due to this uncertainty, the court must receive extrinsic evidence regarding the intent of the parties when initially entering into the contract. In doing so, however, SMS contends that the court must deny Time-World's Motion to Dismiss because this analysis would require the court to look beyond the four corners of the pleadings.

### III.

The court agrees with SMS with respect to this last line of reasoning. The Employee Research Service Agreement explicitly includes the word "indemnification" in its final sentence, and the court is not free to omit this word from the Agreement or treat its inclusion as meaningless. See J.M. Turner & Co. v. Delaney, 211 Va. 168, 172 (1975) (quoting Ames v. American Nat'l Bank, 163 Va. 1, 39 (1934)); Paramount Termite

5

Control Co. v. Rector, 238 Va. 171, 174 (1989); Berry v. Klinger, 225 Va. 201, 208 (1983); Hughes & Co. v. Robinson Corp., 211 Va. 4, 6-7 (1970). However, the court has concerns about the meaning and/or purpose—if any—of "indemnification" where it seemingly refers to absent provisions of the Agreement. Neither Clause Four nor Clause Five creates an explicit obligation for Times-World to indemnify SMS for potential claims brought by third-parties. Rather, Clause Four merely states that Times-World agrees to "release" SMS from "any and all liability . . . in connection with the preparation of . . . and from any loss or expense suffered by resulting directly or indirectly from [SMS]'s reports . . . ." The court recognizes the legal distinction between an agreement to indemnify and an agreement to release,[1] and absent additional evidence to the contrary, the plain meaning of "release" should be given effect. IMWA Equities IX Company, Limited Partnership v. WBC Associates Limited Partnership, et al., 961 F.2d 480, 484 (4th Cir. 1992) (citing Davis v. Davis, 239 Va. 657 (1990)). Similarly, Clause Five simply states that SMS "[i]n no event . . . shall have any responsibility or liability . . . for any failure or delay in performance which results from or is due to, directly or indirectly and in while or in part, any cause or circumstances beyond the reasonable control of [SMS]." While the court recognizes the possibility that both parties could have

---

[1] According to Black's Law Dictionary, the meanings of "indemnity" and "release" are as follows:

> Indemnity: 1. A duty to make good any loss, damage, or liability incurred by another. 2. The right of an injured party to claim reimbursement for its loss, damage, or liability from a person who has such a duty. 3. Reimbursement or compensation for loss, damage, or liability in tort; esp., the right of a party who is secondarily liable to recover from the party who is primarily liable for reimbursement of expenditures paid to a third party for injuries resulting from a violation of a common-law duty . . . .

> Release: 1. Liberation from an obligation, duty, or demand; the act of giving up a right or claim to the person against whom it could have been enforced. 2. The relinquishment or concession of a right, title, or claim . . . .

Black's Law Dictionary (8th Ed. 2004).

6

Case 7:06-cv-00110-JCT   Document 64   Filed 10/08/08   Page 6 of 7   Pageid#: 522

understood the Agreement's reference to "indemnification" to mean the operative means by which SMS would be protected from "any responsibility or liability," this is not obvious from a facial reading of the contract. The court must therefore receive additional parol evidence to resolve these ambiguities and to give proper effect to the disputed provisions and the Agreement as a whole. Stroud v. Stroud, 49 Va. App. 359, 367 (2007) (citing Tuomala v. Regent Univ., 252 Va. 368, 374 (1996)). In doing so, however, the court must deny Times-World's Motion to Dismiss. Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999).

### IV.

In sum, the court finds that the Agreement is ambiguous or unclear with regards to the meaning of "indemnification" and the word's relation to Clauses Four and Five. Due to this ambiguity, and for the reasons set forth above, it is hereby **ORDERED** that Third-Party Defendant Times-World's Motion to Dismiss is **DENIED**. The Clerk of Court is directed to send a copy of this Memorandum Opinion and accompanying Final Order to all counsel of record in this matter.

ENTER: This 7th day of October, 2008.

Hon. James C. Turk
Senior United States District Judge