CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

MAY 27 2010

JOHN F. CORCORAN, CLERK
BY: /s/
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LARRY C. BOWMAN, | ) |
| Plaintiff, | ) |
| v. | ) |
| SELECTION MANAGEMENT SYSTEMS, INC., | ) Civil Action No. 7:06-CV-00110 |
| | ) **MEMORANDUM OPINION** |
| Defendant/Third-Party Plaintiff | ) By: Hon. James C. Turk |
| v. | ) Senior United States District Judge |
| TIMES-WORLD CORPORATION, d/b/a THE ROANOKE TIMES, | ) |
| Third-Party Defendant | ) |

This matter is presently before the Court on the motion for summary judgment (Dkt. No. 73) filed by third-party defendant Times-World Corporation ("Times-World"). Times-World seeks summary judgment on the issue of indemnification that was raised by third-party plaintiff Selection Management Systems, Inc. ("SMS"). SMS filed a memorandum in opposition to summary judgment (Dkt. No. 85). Times-World then filed a reply brief, which also contained a motion to strike an affidavit filed by SMS (Dkt. No. 86). SMS filed a memorandum in opposition to Times-World's motion to strike (Dkt. No. 92), and Times-World filed a second reply brief (Dkt. No. 93). The Court heard oral argument from the parties on May 13, 2010. For the reasons set for in this Memorandum Opinion, Time-World's motion for summary judgment is **GRANTED**.

## I. Background

SMS is an Ohio-based corporation that performs pre-employment background checks for other businesses. One such customer was Times-World. On or about August 2, 1999, SMS and Times-World entered into an Employee Research Service Agreement (the "E.R.S.A.") that set forth various rights and responsibilities of SMS and Times-World regarding any background checks requested by Times-World and provided by SMS. The E.R.S.A. appears to be a standardized, form agreement that SMS had drafted used to contract with many different customers.

In February of 2005, Plaintiff Larry C. Bowman ("Bowman") received a job offer from Times-World for the general manager position at the Blue Ridge Business Journal, a subsidiary of The Roanoke Times. The offer, however, was contingent on Bowman's successful completion of an employment and criminal background check. On February 8, 2005, Times-World requested that SMS conduct this investigation.

On February 10, 2005, SMS submitted a "Fastrax" report to Times-World regarding its background check of Bowman. The Fastrax report was based on SMS's review of public court records and revealed that Bowman had received eight misdemeanor convictions in Montgomery County, Virginia, and one misdemeanor conviction in Smith County, Tennessee. The Fastrax report revealed that the Smith County misdemeanor conviction was on the charge of "contributing to the delinquency of a minor." The Fastrax report claimed to have verified the Smith County misdemeanor conviction by matching Bowman's name and an address in Carthage, Tennessee. Contrary to the Fastrax report, Bowman had never been convicted of contributing to the

delinquency of a minor in Smith County (or any county), nor had he ever been associated with the Carthage, Tennessee address.

On February 10, 2005, Times-World notified Bowman that the results of the Fastrax report were problematic, and that Times-World was immediately revoking its offer of employment. In an effort to correct the report, Bowman contacted SMS the next day and stated that he had never lived, resided, or operated any business in Carthage, Tennessee, and had never been charged with or convicted of any crimes in Smith County, Tennessee. SMS re-investigated the Smith County misdemeanor conviction in more detail, and it issued an amended Fastrax report indicating that Bowman had not been previously charged with or convicted of any crimes in Smith County, Tennessee. Times-World did not re-issue its offer of employment.

Pursuant to various provisions in the Fair Credit Reporting Act, 15 U.S.C. § 1681, Bowman filed the instant action against SMS alleging that the company's incorrect reporting of the Smith County conviction provoked Times-World to withdraw its job offer, thereby causing Bowman actual damages. SMS then filed the Third-Party Complaint at issue here, arguing that should Bowman succeed in his claims, Times-World is obligated to indemnify SMS for any liability related to Bowman's claims according to the terms of the E.R.S.A.. The contention by SMS relies partly on clauses four and five of the E.R.S.A., but most crucially on the final sentence of the E.R.S.A., all of which are set out below. Clause Four (4) of the E.R.S.A. states as follows:

> Selection Management Systems cannot be an insurer of the accuracy of public records. The undersigned agrees and understands that the accuracy of any information furnished is not guaranteed by Selection Management Systems. The undersigned releases Selection Management Systems, its affiliated companies, officers, agents and employees from any and all liability, including, without limitation, liability or damage in connection

with the preparation of such reports and from any loss or expense suffered
by resulting directly or indirectly from Selection Management Systems'
report or those of affiliated companies.

Clause Five (5) states:

In no event shall Selection Management Systems have any responsibility
or liability to whatsoever for any failure or delay in performance which
results from or is due to, directly or indirectly and in whole or in part, any
cause or circumstances beyond the reasonable control of Selection
Management Systems.

Finally, the concluding sentence of the E.R.S.A. injects a measure of ambiguity into the contract by stating that:

The provisions of this agreement relating to indemnification and
confidential information shall survive any expiration or termination of this
agreement.

Times-World denies that the language of the E.R.S.A. creates any indemnification obligation, and argues instead that the terms of the E.R.S.A. relate only to releasing SMS from liability to Times-World. This interpretation would render the term "indemnification" in the ultimate proviso of the E.R.S.A., alternatively, a misnomer or meaningless.

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. PRO. 56(c) (2010). The non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). In determining whether summary judgment is appropriate, the court must view

4

the facts, and inferences to be drawn from those facts, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Nevertheless, where the record taken as a whole "could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).

**III. Choice of Law And Jurisdiction**

The Court has jurisdiction over this third party dispute under 28 U.S.C. § 1332. Virginia law is the appropriate choice of law in this matter because the E.R.S.A. does not have a choice of law provision, and the contract was performed in Virginia. See Daniel Constr. Co., Inc. v. Welsh Contracting Corp., 335 F.Supp. 303 (E.D. Va. 1971).

**IV. Analysis**

This Court had previously held, at the motion to dismiss stage, that the meaning of the term "indemnification" as included in the ultimate proviso of the E.R.S.A was ambiguous. Nevertheless, after receiving parol evidence addressing the meaning of the provisions of the contract, and after review of the entirety of the contract, the Court now finds that the contract, as a whole, is unambiguous. Although it is unclear precisely why the parties included the term "indemnification," it is crystal clear that the E.R.S.A. neither encompasses the concept of indemnification generally, nor envisions Times-World indemnifying SMS specifically.

### A. Distinct Concepts of Indemnification and Release

According to Black's Law Dictionary, to indemnify another party is to "reimburse (another) for a loss suffered because of a third party's act or default." BLACK'S LAW DICTIONARY 772 (7th ed. 1999). On the other hand, a release of another party is, "the act of giving up a right or claim to the person against whom it could have been enforced." Id. at 1292. The key distinction between these two concepts is their scope. When Person A "releases" Person B the scope of the release is narrow; A has guaranteed only that they will not seek to hold B liable or otherwise pursue a claim against B. When Person A "indemnifies" Person B, however, A has guaranteed that no matter who seeks to hold B liable or pursues a claim against B, A will reimburse (or defend) B for any loss. Because the expansive potential scope of indemnity clauses, Virginia courts are repeatedly instructed to be "most reluctant to construe a contract indemnifying a party against its own negligence unless the terms are clear and explicit." Daniel Const. Co., 335 F.Supp. at 305.

Here, Clause Four expressly adopts the concept of release. "The undersigned releases [SMS]...from any and all liability." E.R.S.A. ¶ 4. Clause Five, however, does not expressly refer to either the concept of release or indemnification. Instead, Clause Five states, confusingly, that "[i]n no event shall [SMS] have any responsibility or liability to whatsoever for any failure or delay in performance." E.R.S.A. ¶ 5. The only express reference to indemnification is in the last sentence of the contract, a clause which identifies which provisions will survive the expiration or termination of the contract. This express reference to indemnification, however, does not incorporate the concept of indemnification into the contract because it does not explain which party is indemnifying

6

the other. Thus, the concept of indemnification, and specifically SMS's contention that Times-World agreed to indemnify SMS, if it is present in the contract, must be grounded in Clause Five.

### B. Clause Five Is Not An Indemnification Clause

While considering Times-World's motion to dismiss, the Court recognized the possibility, however unlikely, that indemnification was the "operative means by which SMS would be protected from 'any responsibility or liability.'" Bowman v. Selection Management Systems, Inc., No. 7:06CV00110, 2008 WL 4533979, at *3 (W.D.Va. Oct. 08, 2008). Upon further review of the entirety of the contract, and in light of the parol evidence, this unlikely possibility has now been extinguished. "Parol evidence is admissible, not to contradict or vary contract terms, but to establish the real contract between the parties." Tuomala v. Regent Univ., 252 Va. 368, 374, 477 S.E.2d 501, 505 (1996). The most important parol evidence in this case is the nature of the contract: a standardized, form contract that was provided by SMS to their independent contractors to use with new customers. *Oyler Aff.* ¶ 6; *Hurley Aff.* ¶ 6. SMS has admitted that these terms were "part of the standard form." *Interrog. Resp.* ¶ 16. Before the contract was to be executed by the customer, Mr. Oyler was to insert certain customer-specific identifiers into the standard form. *Oyler Aff.* ¶ 11. When the contract is understood as a standard form contract, which awaits the insertion of the particular customer's name throughout, it is clear that the ambiguity in Clause Five is the result of the failure of Mr. Oyler to insert the name of the customer throughout the contract.

It appears to the Court that both parties intended Clause Five to read: "In no event shall Selection Management Systems have any responsibility or liability to [The Roanoke

7

Times] whatsoever for any failure or delay...". E.R.S.A. ¶ 5. The original, nearly incomprehensible phrasing, "in no event shall [SMS] have any responsibility or liability to whatsoever for any failure or delay," is immediately transformed by appending the specific customer's name following "any responsibility or liability to." E.R.S.A. ¶ 5. In fact, muddled and unclear phrasing throughout the document is remedied whenever the customer's name is inserted.[1] Unfortunately for SMS, when the customer's name is appended to Clause Five, it is also unmistakably revealed to be a release clause, and not an indemnification clause. This is consistent with the affidavit of the SMS agent, Mr. Oyler, who understood only that "the agreement was intended . . . to have Times-World release SMS in the event that Times-World was sued" and not to have Times-World indemnify SMS in the event SMS was sued by a third-party. *Oyler Aff.* ¶ 14.

Thus, it is evident that the E.R.S.A. was a standardized contract meant to be updated with each customer's name and equally clear that the SMS agent's failure to adequately update the standardized form caused the initial, underlying ambiguity. When the standardized contract is updated with the customer's name, the ambiguity disappears. The updated Clause Five is indisputably a release, not an indemnification clause, even under the standard of review at the summary judgment stage. It relates entirely to the extent of SMS's responsibility and/or liability to Times-World. This is the concept of release, not indemnification. Thus, despite the inclusion of the term

---

[1] Originally Clause Six read: "If chooses to utilize Fastrax, our proprietary software, agrees to pay [SMS]...". See E.R.S.A. ¶ 6. If the customer's name is inserted, Clause Six reads more sensibly: "If [The Roanoke Times] chooses to utilize Fastrax, our proprietary software, [The Roanoke Times] agrees to pay [SMS]..." Id.

indemnification in the contract, the intentions of the parties to E.R.S.A. did not encompass Times-World indemnifying SMS against third-party claims.[2]

### C. Harmonization of Term Indemnification With Contract

Parol evidence also suggests why the term "indemnification" was used by SMS in the standard form contract, and how it can be harmonized with the rest of the contract. See Ames v. Am. Nat'l Bank, 163 Va. 1, 38, 176 S.E. 204, 216 (1934) (instructing that "[provisions should] be harmonized so as to effectuate the intention of the parties as expressed in the contract considered as a whole"). The Court must conclude that SMS did not understand the distinction between an indemnity and a release. First of all, Charles Bailey, SMS's corporate representative, identified Clause Four as the indemnification provision at his deposition. *Bailey Dep.* 189:18 – 190:4. But as discussed above, Clause Four is undoubtedly a release clause. Although Bailey's later affidavit attempts to disavow this misidentification, his affidavit reinforces the Court's conclusion that SMS did not fully appreciate the difference between an indemnity and a release. In fact, Bailey still seems to believe that "indemnification" term in the last sentence of the paragraph would apply to both Clause Four and Five. See *Bailey Aff.* ¶ 8. ("The word 'indemnification' refers *principally* to the provisions contained in Paragraph 5 (emphasis added); Id. ¶ 9 ("In particular, paragraph 5 of the Agreement is the *primary* provision to which the term 'indemnification,' just above the signatures, referred.") (emphasis added). Indemnification cannot refer *principally* or *primarily* to Clause Five,

---

[2] Although the Court recognizes that the doctrine *contra proferentem* is "often denigrated as a rule of last resort," the Court's resolution of the ambiguity present in this contract is entirely consistent with this rule of construction. See E. Allan Farnsworth, FARNSWORTH ON CONTRACTS § 7.11 at 304 (3d ed. 2004). SMS drafted this contract, and was tasked with updating the various provisions of the contract. When an ambiguity arises out of SMS's failure to complete these tasks, "under familiar rules of construction, this ambiguity must be construed against the bank, the party who supplied the printed forms." First Nat'l Bank of Martinsville & Henry County v. Roy N. Ford Co., 219 Va. 942, 946, 252 S.E.2d 354, 357 (1979).

but also refer, presumably, *additionally* or *secondarily* to the release in Clause Four. If Clause Five were, in fact, an indemnification clause, than the term indemnification in the last sentence would necessarily refer *only* and *exclusively* to Clause Five.

Parol evidence thus suggests that SMS understood the term "indemnification" in the final sentence to refer to both Clause Four and Five – even though neither Clause Four nor Five actually expressed or included the concept of indemnification. Thus, the final sentence providing that "the provisions...relating to indemnification" is not meaningless; it was meant to indicate that the releases incorporated in Clauses Four and Five shall survive the expiration of the agreement. See Ames, 163 Va. at 38, 176 S.E. at 216 ("No word or clause is to be treated as meaningless if any reasonable meaning consistent with the other parts of the contract can be given to it."). It is more reasonable to conclude that SMS mistakenly referred to the release provisions as indemnification provisions than to conclude that SMS contracted for a missing indemnification clause to survive the contracts expiration, but did not address the survivability of two important release clauses.

## IV. Conclusion

In sum, after reviewing the parol evidence and construing the contract as a whole, the Court finds that contrary to the arguments of SMS, the E.R.S.A. does not contain the concept of, or provide for, the indemnification of SMS by Times-World. The term indemnification in the last sentence of the contract refers to the releases incorporated in Clauses Four and Five. Here the record taken as a whole "could not lead a rational trier of fact to find for the non-moving party [and therefore] disposition by summary judgment

is appropriate." Teamsters, 947 F.2d at 119. Accordingly, it is hereby **ORDERED** that Third-Party Defendant Times-World's Motion for Summary Judgment is **GRANTED**.

The Clerk of Court is directed to send a copy of this Memorandum Opinion and accompanying Order to all counsel of record in this matter.

ENTER: This 27th day of May, 2010.

/s/ James C. Turk
Hon. James C. Turk
Senior United States District Judge